USCA1 Opinion

 

 September 28, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1122 No. 92-2272 JOSE MANUEL GONCALVES, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. ____________________ ON PETITIONS FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ David Yavner for petitioner. ____________ Donald Keener, Acting Assistant Director, with whom Stuart M. ______________ __________ Gerson, Assistant Attorney General, Civil Division, Anne C. Arries, ______ _______________ Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, and David M. McConnell, Attorney, Office of Immigration ___________________ Litigation, Civil Division, Department of Justice, were on brief for respondent. ____________________ ____________________ BREYER, Chief Judge. The Board of Immigration ____________ Appeals has a general procedural rule that says it "may . . . reopen or reconsider any case in which it has rendered a decision." 8 C.F.R. 3.2 (1993). In a series of cases, however, the Board has developed an exception to this procedural rule. The exception relates to a certain kind of Board decision: whether or not to grant "discretionary relief" which would permit an alien, otherwise "deportable," nonetheless to remain in the United States. Immigration and Nationality Act (INA) 212(c), 8 U.S.C. 1182(c). According to the procedural exception, once the Board has denied the alien's initial "discretionary relief" application (and thus the Board has finally found the alien "deportable"), the alien may not ask the Board to reopen his ___________ ______ deportation proceedings for further consideration of his application. See, e.g., Matter of Cerna, Int. Dec. 3161, ___ ____ ________________ slip op. at 3-4 (BIA Oct. 7, 1991). This appeal requires us to decide whether the Board's "no reopening" exception to its ordinary "reopening" rule is lawful. The Third and Fifth Circuits have held that it is lawful. See Katsis v. INS, 997 F.2d 1067 (3d Cir. ___ ______ ___ 1993); Ghassan v. INS, 972 F.2d 631, 637 (5th Cir. 1992), _______ ___ cert. denied, 113 S. Ct. 1412 (1993); see also Cerna v. INS, ____________ ___ ____ _____ ___ 979 F.2d 212, 213 (11th Cir. 1992) (table), aff'g without ______________ opinion Matter of Cerna, Int. Dec. 3161 (BIA Oct. 7, 1991). _______ _______________ The Second and Ninth Circuits have held that it is not. See ___ Butros v. INS, 990 F.2d 1142 (9th Cir. 1993) (en banc); ______ ___ Vargas v. INS, 938 F.2d 358 (2d Cir. 1991). We, like the ______ ___ latter two circuits, do not understand the basis for the "no reopening" exception. In our view, the Board has not properly explained why it will consider motions to reopen in most cases but not in the particular circumstances illustrated here. We therefore hold that the Board may not invoke this exception as grounds for refusing to consider the petitioner's motion to reopen in this case, and we remand the case to the Board for further consideration of that motion. I A. Legal Background ________________ To understand the issue before us, the reader must keep in mind the following legal background. First, the INA lists a host of grounds for excluding or deporting aliens, including conviction of a drug-related crime. See, e.g., 8 ___ ____ U.S.C. 1182(a)(2) (exclusion), 1251(a)(2)(B) (deportation). The Act also says that a certain class of these "deportable" aliens -- those who have lived here for -3- 3 seven years as aliens "lawfully admitted for permanent residence" -- can ask the Attorney General (i.e., the Board, see 8 U.S.C. 1103(a); 8 C.F.R. 3.0, 3.1(a), (b)(3), ___ 212.3(a)(2), (e)(3) (1993)) to exercise a kind of equitable discretion that would permit them to remain here even though they have, for example, committed a drug crime. INA 212(c), 8 U.S.C. 1182(c) (see Appendix for text). The Act defines the class of those eligible for this relief as those who, for seven years, hav[e] been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. ______________________________ 8 U.S.C. 1101(20) (emphasis added) (defining "lawfully admitted for permanent residence"). Second, an Immigration Judge (IJ) normally will make the initial decision as to whether a particular alien is "deportable," 8 C.F.R. 242.8(a) (1993), and if so, whether he is eligible to apply for section 212(c) "discretionary relief." Id. 212.3(a)(2), (e). If the __ alien is eligible, the IJ will further decide whether, given the "equities," the Attorney General will grant that relief. Id.; Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978); ___ _______________ see generally 3 Charles Gordon & Stanley Mailman, ___ _________ -4- 4 Immigration Law and Procedure 74.01[2][a]-[b] (1993). If dissatisfied with the result, the alien may appeal to the Board of Immigration Appeals, 8 C.F.R. 3.1(b)(3), 212.3(e)(3) (1993), which may hold a hearing, take evidence and decide the issues de novo. Hazzard v. INS, 951 F.2d _______ _______ ___ 435, 440 n.4 (1st Cir. 1991); Matter of Lok, 18 I. & N. Dec. _____________ 101, 106 (BIA 1981); 1 Gordon & Mailman, supra, _____ 3.05[5][b]. If the Board reaches a negative decision, the regulations (while phrased negatively, see infra pp. 9 - 10) ___ _____ indicate that the alien normally may ask the Board either to reconsider its decision or to reopen the proceeding in light of "circumstances which have arisen subsequent to the hearing." 8 C.F.R. 3.2 (1993). The Supreme Court has pointed out that the regulation governing motions to reopen "does not affirmatively require the Board to reopen the proceedings under any particular condition." INS v. Jong Ha ___ _______ Wang, 450 U.S. 139, 144 n.5 (1981) (per curiam). The issue ____ before us, however, concerns not whether the Board must grant the motion, but whether it must consider it. _____ ________ Third, despite these regulations, the Board has held in a series of cases that an alien, resident here lawfully for seven years but under an administratively final deportation order, may not ask the Board to reopen a _____________ -5- 5 proceeding ordering deportation to obtain further consideration of "discretionary relief" under section 212(c). The Board has based these holdings on the theory that a final Board decision ordering deportation means that the alien's "status" has "changed." He is therefore no longer "lawfully admitted for permanent residence," see 8 ___ U.S.C. 1101(20), and thus falls outside the category of those whom section 212(c) permits to ask for discretionary relief. And since the alien would now be ineligible to apply for section 212(c) relief in the first instance, see, ___ e.g., Rivera v. INS, 810 F.2d 540, 541 (5th Cir. 1987), the ____ ______ ___ Board reasons that he also may not move to reopen a ______ previously decided section 212(c) application. See, e.g., ___ _____ Katsis, 997 F.2d at 1069; Butros, 990 F.2d at 1143. The ______ ______ Board does not, however, deny the alien the right to move for reconsideration of the earlier section 212(c) _______________ application. Cerna, slip op. at 5. _____ B. Factual Background __________________ The case before us involves a resident alien, Jose Manuel Goncalves, who entered the United States as a baby in 1968 and who has lived here ever since. He has committed serious crimes, including drug crimes. In late 1989, the INS began deportation proceedings. Goncalves conceded that -6- 6 he was deportable. Goncalves then asked the Attorney General to exercise equitable discretion in his favor under section 212(c). An IJ rejected this request on May 21, 1991 and ordered him deported. On January 8, 1992, the Board of Immigration Appeals, after weighing the various equities for and against Goncalves, also rejected the "discretionary relief" request and affirmed the IJ, thus rendering Goncalves' deportation order "final." 8 C.F.R. 243.1 (1993). Goncalves then moved to reopen the deportation proceeding so that he could present letters and an employment record that, in his view, amounted to new evidence of his rehabilitation sufficient to change the outcome of the Board's "discretionary" calculus. After a series of proceedings not here relevant, the Board, on October 8, 1992, denied the motion to reopen on the sole ground that Goncalves, his "status . . . having changed" by virtue of the Board's "final" deportation order of January 8, 1992, was no longer "lawfully admitted for permanent residence" and therefore "[could] not establish a prima facie case for relief." The Board did not address the merits of his request to reopen. Goncalves now appeals the Board's denial of his motion to reopen. He argues that the -7- 7 law requires the Board at least to consider it. We believe he is correct. -8- 8 II Analysis ________ The Board's refusal to allow aliens to make certain "reopening" motions is, in essence, a detail of its procedure. In deciding the lawfulness of such a detail, we recognize that Congress intended the Attorney General to have considerable leeway in working out the precise procedures for determining contested issues related to deportation and "discretionary relief." 8 U.S.C. 1103(a), 1182(c). The Attorney General has delegated the authority to work out such procedures to the Board. 8 U.S.C. 1103(a); 28 C.F.R. 0.115-0.117 (1991); 8 C.F.R. 3.0, 3.1(a), 3.1(d)(3) (1993). We therefore must respect the Board's judgment in such matters. See, e.g., FCC v. ___ ____ ___ Pottsville Broadcasting Co., 309 U.S. 134, 143 (1940); Union ___________________________ _____ of Concerned Scientists v. Nuclear Regulatory Comm'n, 920 ________________________ _________________________ F.2d 50, 54 (D.C. Cir. 1990); American Trucking Ass'ns v. _________________________ United States, 627 F.2d 1313, 1320-21 (D.C. Cir. 1980) ______________ (deferring to agency regulations governing intervention on ground that "procedural regulations are generally within the discretion of the agency"); Wagner Seed Co. v. Bush, 946 ________________ ____ F.2d 918, 920 (D.C. Cir. 1991), cert. denied, 112 S. Ct. ____________ 1584 (1992). The Administrative Procedure Act provides, -9- 9 however, that the Board may not act arbitrarily or "abuse" its "discretion." 5 U.S.C. 706(2)(A). And, even though we give the Board considerable leeway, we nonetheless conclude that it has acted arbitrarily in this instance. We reach this conclusion for the following three reasons, taken together. First, one of the Board's procedural regulations strongly suggests that it will permit motions to reopen in ____ cases of this sort. The regulation first makes clear that "[t]he Board may . . . reopen or reconsider any case in ___ ______ ___ which it has rendered a decision" (unless the motion is made after the alien has left the United States). 8 C.F.R. 3.2 (1993) (emphasis added). The regulation then says the following: Reopening or reconsideration of any case in which a decision has been made by the Board, whether [or not] . . . requested by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor -10- 10 was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. A motion to reopen . . . shall not be made by . . . a person who is the subject of deportation proceedings subsequent to his departure from the United States. Id. We recognize that the regulation is phrased in negative ___ terms, which means that it does not explicitly grant any right to anyone ever to ask to reopen a proceeding. Nonetheless, consider the words nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted . . . unless the relief is sought on the basis ________________________________________ of circumstances which have arisen ________________________________________ subsequent to the hearing. _________________________ Id. (emphasis added). Coupled with the Board's explicit ___ authority to reopen any case, what could those words mean but that the alien does have a right to move for reopening ____ to ask for "discretionary relief . . . on the basis of ___ circumstances which have arisen subsequent to the rehearing"? See Butros v. INS, 990 F.2d 1142, 1144 (9th ___ ______ ___ Cir. 1993) (en banc) ("Board's regulations do say[] that you may have a second round"). But cf. Katsis v. INS, 997 F.2d _______ ______ ___ 1067, 1073 n.6 (3d Cir. 1993) (arguing that the emphasized language is "hardly a rousing encouragement for or approval of" using "evidence manufactured after the fact . . . to -11- 11 support a motion to reopen"). An agency, of course, has every right to interpret its own rules. E.g., Stinson v. ____ _______ United States, 113 S. Ct. 1913, 1919 (1993); Bowles v. ______________ ______ Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). But _________________________ there are limits, set by what is "reasonable." Ford Motor __________ Credit Co. v. Milhollin, 444 U.S. 555, 565-66 (1980); ___________ _________ Commonwealth of Massachusetts, Dept. of Public Welfare v. ________________________________________________________ Secretary of Agriculture, 984 F.2d 514, 524 (1st Cir. 1993) ________________________ ("an administrative agency enjoys great latitude to interpret its own rules as long as those interpretations are ____________________________________ reasonable") (emphasis added). And the agency must follow __________ its own rules, as reasonably interpreted. Arizona Grocery ________________ Co. v. Atchison, T. & S.F. Ry. Co., 284 U.S. 370, 389-90 ____________________________________ (1932). Second, the Board, while claiming that its exception is a reasonable "interpretation" of its regulation, reached that interpretation by following a complicated logical syllogism that, in our view, is either irrelevant or erroneous. The syllogism runs approximately as follows: (1) The INA allows section 212(c) "discretionary relief" only upon the request of a resident alien whose "status" has not "changed." See 8 U.S.C. ___ 1101(20), 1182(c); supra pp. 3 - 4. _____ -12- 12 (2) The INA does not say just when, during a deportation proceeding, the alien's "status . . . change[s]." (3) The Board thus has considerable legal leeway in interpreting the statute with respect to the precise time when "status . . . change[s]." Chevron U.S.A. v. Natural Resources Defense _______________ ____________________________ Council, 467 U.S. 837 (1984); Matter of Cerna, _______ ________________ Int. Dec. 3161, slip op. at 10 (BIA Oct. 7, 1991) (citing Chevron). _______ (4) In Matter of Lok, 18 I. & N. Dec. 101, 106 ______________ (BIA 1981), and later cases, the Board held that a "status change" takes place at the time the Board enters a final deportation order. E.g., Nwolise ____ _______ v. INS, No. 91-1173, slip op. at 4, 7 (4th Cir. ___ Sept. 3, 1993); Perez-Rodriguez v. INS, No. 92- _______________ ___ 3081, slip op. at 5, 7 (7th Cir. Aug. 25, 1993); Rivera v. INS, 810 F.2d 540 (5th Cir. 1987); cases ______ ___ cited supra pp. 2 - 3, _____ (5) Once that final deportation order is entered, then, since the alien's "status" has "changed" (see step (4)), the alien must be ineligible to ___ ask for discretionary relief. (6) A motion to reopen amounts to a request for discretionary relief. Therefore, (7) an alien whom the Board orders deported cannot ask the Board to reopen the proceeding to request discretionary relief. The flaw in this syllogism is that step (4) does not lead to step (5). The law permits the Board to decide (within reason) when a "change of status" takes place, but it also permits the Board to decide that moment differently ____ ___________ for different purposes. Cf. Butros, 990 F.2d at 1145 ___ ______ (discussing the "fallacy of . . . the belief that what is -13- 13 final for certain administrative purposes is final for all purposes"). In Lok (the source of the problem), the Board ___ considered a substantive question, namely, whether or not a person ordered deported after less than seven years of lawful residence could continue to accrue time towards the magic "seven years" while his deportation case was on appeal. Lok, 18 I. & N. Dec. at 102-05. The Board sensibly ___ held that the "seven year" clock stopped ticking once the Board ordered deportation. It found that his "status" "changed" at that moment for the purpose of accruing time. _________________________________ See Vargas, 938 F.2d at 361 ("Matter of Lok, therefore, ___ ______ ______________ stands only for the proposition that an alien cannot become ______ eligible for discretionary relief through subsequent accrual of time towards the seven-year threshold, once he has conceded that he is deportable."); Lok v. INS, 681 F.2d 107 ___ ___ (2d Cir. 1982); Lok, 18 I. & N. Dec. at 105. ___ Lok does not mean, however, that the alien's ___ "status" must also "change" for the purpose of his ___________ eligibility to ask for reopening. After all, the Board itself agrees that the alien remains eligible to ask for reconsideration. 8 C.F.R. 3.2 (1993); Matter of Cerna, _______________ ________________ Int. Dec. 3161, slip op. at 5 (BIA Oct. 7, 1991). Even after entry of the Board's "final" deportation order, the _____ -14- 14 alien can call to the Board's attention evidence already in the record in an effort to show that the Board's denial of discretionary relief is unlawful or to convince it to exercise its "discretion" differently. Cerna, slip op. at _____ 5-6. Moreover, the alien remains free to appeal the denial of discretionary relief to the courts. The entry of the Board's final order does not "change" his "status" for this purpose (if it did, it would moot the appeal by making it impossible for the alien to receive "discretionary relief" even if he wins). See Butros, 990 F.2d at 1145. In short, ___ ______ Lok's substantive conclusion may or may not permit the ___ ______ procedural exception to the Board's reopening regulations at issue here, but it certainly does not require it. _______ Either the Board understands that step (4) does not compel step (5) (i.e., that Lok and other "substantive" ___ change of status precedents do not legally compel its ______ present position on motions to reopen), or it does not understand that. If it does not, then it has based its procedural exception upon a legal misunderstanding, in which case it must reconsider the matter. See Camp v. Pitts, 411 ___ ____ _____ U.S. 138, 143 (1973) (per curiam); SEC v. Chenery Corp., 318 ___ _____________ U.S. 80, 93-95 (1943) (where agency's decision rests, in significant part, upon an incorrect view of what the law -15- 15 requires, court should set forth the correct view and remand the case for new agency decision). If it does understand ____ that its procedural exception does not follow inevitably from Lok, then it has failed to explain why it adopted that ___ ___ exception, for its opinions on the matter, and its efforts to justify the exception in court, rely in large part upon Lok and a syllogism that is basically irrelevant. That ___ syllogism -- based upon the substantive "change of status" statute, 8 U.S.C. 1101(20) -- is irrelevant because the Board does not need to refer to the "change of status" statute to justify its procedural "no reopening" exception if that exception is reasonable, and reference to the ___________________________________ statute cannot help the Board justify the exception if that ________ exception is not reasonable. The basic question is the ______________________________ reasonableness of the exception, not the intricate maze of relationships between it and the substantive statute. And the reasonableness of the exception seems doubtful, given the fact that its finely-spun distinctions (e.g., allowing reconsideration but not reopening) have virtually no explanation apart from those based on the syllogism. See, ___ e.g., Cerna, slip op. at 5-7. ____ _____ Third, we say "virtually" because the Board does offer one practical consideration in an effort to answer the -16- 16 question "why is the 'no reopening' exception reasonable?." _______________________________________________ It says that the exception is reasonable because it will prevent aliens from "stringing out" their claims, i.e., by removing the possibility of the alien's asking for a reopening, the exception also removes the alien's temptation to withhold some evidence initially in order to obtain reopening after an adverse decision. Some courts have accepted this justification. See, e.g., Katsis, 997 F.2d at ___ ____ ______ 1072, 1074. We cannot do so, however, both because the Board seems to rely more upon its logical syllogism than upon this practical justification, see, e.g., Cerna, slip ___ ____ _____ op. at 3-7, and because the explanation itself raises fairly obvious questions that the Board has not yet answered. Why, for example, isn't the Board's printed regulation -- limiting reopenings to those sought on the "basis of circumstances that have arisen subsequent to the hearing," see supra p. 10 -- sufficient to remove the ___ _____ temptation to withhold evidence, thus obviating the Board's practical concern? Why is the "stringing out" problem greater where "discretionary relief" involving seven year resident aliens is at issue than in other deportation cases? Why is the "stringing out" problem greater in such cases than where other "discretionary relief" matters, such as a -17- 17 request for suspension of deportation under INA 244(a), are at issue? See 8 U.S.C. 1254(a); 8 C.F.R. ___ 3.1(b)(2), 242.8(a), 242.22, 242.21(a), 244.1 (1993); 3 Gordon & Mailman, supra, 74.07[5][e], [7]. Why does the _____ Board absolutely forbid motions to reopen section 212(c) __________ discretionary relief applications? Does it really believe that circumstances could never change enough, that even the _____ most heroic, public spirited, self-sacrificing action by a seven year resident alien, after the "final" deportation order, could not alter the outcome of the "equity" calculus? We do not say that no satisfactory answers to these questions exist, but we do say that the Board seems not to have asked them. We stress, and we well understand, that the exigencies of the practical world in which the Board must work require that we do not, and we will not, expect the Board to answer every potentially relevant question regarding its procedures. Here, however, the problem goes beyond the fact that the Board has left obvious questions unanswered. More fundamentally, the Board has not focused _______________ directly on the basic question of whether or not the ________ particular procedure before us is desirable, nor has it clearly explained its position. Further, it has instead -18- 18 unnecessarily relied on a logical syllogism involving a theoretical analysis of its own cases interpreting a statute of only marginal relevance to the problem, rather than squarely facing the practical question of whether the procedural exception is good or bad. Finally, it has acted in the face of a regulation that seems rather clearly to authorize the very kind of "reopening" motion that its cases then deny. Taking all these circumstances together, we find _______________________________________ the practice insufficiently justified. That is to say, we find no legally adequate explanation of why the Board has departed from the rule set forth in its own regulation. We therefore conclude that the Board's departure from that regulation is "arbitrary," and we set it aside. III Relief ______ Having set aside the Board's exception that absolutely forbids motions to reopen, we remand for consideration of the petitioner's motion to reopen his case. We shall not decide petitioner's further appeal of the Board's basic decision to deport him until the Board decides the motion to reopen. We also have a suggestion. The circuit courts have now split three to two about the lawfulness of the "no -19- 19 reopening" exception. Obviously, the Board will be tempted to ask for Supreme Court review. There is, however, a simpler way. Why does the Board not consider amending its procedural regulations to reach the procedural result for which it argues here? Cf. Butros, 990 F.2d at 1144 ("The ___ ______ Board could, no doubt, alter this regulation . . . ."), 1146 (Fernandez, J., concurring) ("If the INS now wishes to adopt different regulations, that route is available to it."). If its exception makes sense, and it explains why that is so, all courts would respect the result. If the exception does not make sense, the Board will not adopt it, and that will be the end of the matter. This suggestion is not, of course, legally binding, and there may be sound reasons not to follow it. Yet it seems to us to offer a fairly simple way out of what has become something of a legal morass, involving five courts of appeals threading their way through minor procedural details of a highly complex subject. The petition in No. 92-2272 for review of the Board of Immigration Appeals' decision is granted, and the case is remanded for further proceedings consistent with this opinion. We do not reach the issues presented in No. 92-1122. So ordered. ___________ -20- 20 APPENDIX ________ INA 212(c), 8 U.S.C.A. 1182(c) (West Supp. 1993), provides in pertinent part: Aliens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Although on its face this section applies only to resident aliens who have temporarily left the United States and seek readmission, case law has extended its application to resident aliens who have not left the United States. See ___ Joseph v. INS, 909 F.2d 605, 606 n.1 (1st Cir. 1990); ______ ___ Francis v. INS, 532 F.2d 268 (2d Cir. 1976); Matter of _______ ___ _________ Silva, 16 I. & N. Dec. 26, 30 (BIA 1976). _____ -21- 21